**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

Marlon Andres Torres Gomez,

       *Petitioner*,

    v.

LUIS SOTO, WARDEN, Delaney Hall
Detention Center et al.,

       *Respondents*.

No. 26-cv-7181 (MEF)


**OPINION and ORDER**

---

\*    \*    \*

For the purposes of this brief Opinion and Order, the Court assumes virtually full familiarity with the facts and procedural history of this case.

\*    \*    \*

"As a rule, individuals lawfully determined to be deportable from [the United States] are not entitled to leave on their own terms but instead face detention and forcible removal." Monsalvo v. Bondi, 604 U.S. 712, 715 (2025) (citing Dada v. Mukasey, 554 U.S. 1, 11 (2008)).

But in some circumstances, "the government can afford the option of a 'voluntary departure' to [non-citizens] 'of good moral character.'" Id. (quoting 8 U.S.C. § 1229c(b)(1)(B)).

As the Supreme Court has noted, "when the government grants a non-citizen the option to voluntarily depart, it effectively makes detention and removal contingent: Officials may detain and remove the individual only if he remains in the country after his voluntary-departure period has expired." Id.

\*    \*    \*

On May 12, 2006, while the Petitioner[1] was in custody, an immigration judge ordered that he (the Petitioner) be allowed to

---

[1]   Marlon Andres Torres Gomez.

voluntarily depart from the United States.  See Petition for Writ of Habeas Corpus ("Petition"), Exhibit B ("Exhibit B") (ECF 1-2) at 6.

Per the immigration judge's order, the Petitioner was "ordered to depart by [June 11, 2026]."  See id.

\*     \*     \*

In the run-up to June 11, three main things happened.

First, the Petitioner's counsel emailed the Respondents several times.  Confirming that the Petitioner "need[ed] to depart by June 11."  Petition, Exhibit D ("Exhibit D") (ECF 1-2) at 19.  Asking to "coordinate his departure."  Id. at 20.  And "requesting that [the Petitioner] be allowed to travel on June 10th" in order to comply with his voluntary departure order.  Id. at 23; see also id. at 23, 25 (requesting clarification on "how [to] proceed with assuring that [the Petitioner] is able to follow the judge's order").

Second, the Petitioner bought a one-way plane ticket from New York to Colombia, set to depart on June 10th.  See id. at 26-27.

And third, "ICE did not permit [the] Petitioner to depart on or before June 11."  Expedited Answer to § 2241 Petition ("Respondents' Answer") (ECF 6) at 3; see Joint Statement (ECF 11) at 2.  Instead, the Petitioner was kept in custody, and the voluntary departure deadline came and went.

Because the Petitioner "failed to depart" by June 11, the Respondents argue that "he is now subject to a final order of removal" --- which means that he must be detained on a mandatory basis under 8 U.S.C. § 1231, and, perhaps, that certain "statutory penalties" can now be imposed on him.  See Respondents' Answer at 3-5.

\*     \*     \*

In light of the above, the Petitioner filed the current habeas petition, arguing, among other things, that his detention violates the Due Process Clause of the Constitution.  See Petition (ECF 1) at 14-17.[2]

---

[2]  This is the third habeas petition the Petitioner has filed in this district.  See Petition for Writ of Habeas Corpus, Torres Gomez v. Soto, No. 26-cv-2886 (D.N.J. Mar. 20, 2026) (ECF 1); Petition for Writ of Habeas Corpus, Torres Gomez v. Soto, No.

This gets it right.

Per the immigration court's May 12 order, the Petitioner was to leave the United States by June 11.  See Exhibit B at 6.  But he has instead remained in the United States because the Respondents have kept him detained.  Respondents' Answer at 3; Joint Statement at 2.  Detention has prevented the Petitioner from complying with the immigration judge's order; detention, for example, prevented the Petitioner from getting on the June 10 flight he bought a ticket for, from Colombia to New York.  Cf. Exhibit D at 26-27.

The materials filed by the parties do not suggest that the Petitioner's post-June 11 detention was based on any meaningful process --- let alone any process that could satisfy the Supreme Court's three-part test, as set out in Mathews v. Elridge, 424 U.S. 319, 335 (1976).  See generally Gayle v. Warden Monmouth Cnty. Corr. Inst., 12 F.4th 321, 331 (3d Cir. 2021) (applying "the due process factors identified in Mathews v. Eldridge" in the immigration habeas context) (cleaned up).

*     *     *

What has instead been offered up by the Respondents are three after-the-fact and plainly non-persuasive justifications for the Petitioner's post-June 11 detention.

There is, first, a suggestion that the Petitioner was not allowed to leave the United States (as the immigration judge ordered) because this Court had entered an injunction preventing his removal from the United States.  See Respondents' Answer at 4.  But the cases in which injunctions had been issued were closed well before June 11.  See June 5, 2026 Text Order, Torres Gomez v. Soto, No. 26-cv-5115 (D.N.J. June 5, 2026) (ECF 12); see also April 27, 2026 Text Order, Torres Gomez v. Soto, No. 26-cv-2886 (D.N.J. Apr. 27, 2026) (ECF 23).  And in any event, (i) the injunctions ran against the Respondents, but did not purport to limit any actions by the Petitioner to remove himself, and (ii) there is no factual support for the idea that the injunctions had any bearing on federal officials' decision-

---

26-cv-5115 (D.N.J. May 5, 2026) (ECF 1).  Parts of the current petition make arguments that have already been resolved by the Court.  To the extent the current petition is intended as a request for reconsideration of earlier decisions, it is denied.

3

making (until the legal briefs invoked them in this habeas case).

There is, second, the assertion that the immigration court offered the Petitioner an extension of his voluntary-departure deadline. See Respondents' Answer at 4. But that hardly provides a basis for keeping the Petitioner in custody. And anyway, the extension-offer came after the June 11 deadline had already expired. See Joint Statement at 3 (noting that the extension offer was made on June 12).

Third and finally, the Respondents suggest that the Petitioner was not released from custody and allowed to depart to protect his own rights --- in particular, the Petitioner's ability to pursue an appeal from the immigration judge's order to depart. See id. at 2.

This is at odds with common sense. It is described by the United States Attorney's Office in only the most generic way. See Respondents' Answer at 3-4. It is not backed up by any document (like an email or something equivalent to a notice of appeal) that indicates that the Petitioner was affirmatively pursuing an appeal --- the deadline for which seems to have been June 11. See id. at 3. It runs against the extensive (though general) evidence that the Petitioner was actively seeking to timely depart from the United States. See Exhibit D at 18-27. And it runs against the more specific information put forward by the Petitioner --- about his statement on a particular date (June 5) to a particular, named ICE official that he did not want to appeal. See Joint Statement at 2.

The Court credits the Petitioner's account and finds that (i) he did not affirmatively indicate that he would be pursuing an appeal and (ii) that he affirmatively indicated, on a timely basis, that he did not want to pursue an appeal.

*    *    *

All of this matters here for one basic reason: it provides a concrete sense of the "risk of erroneous deprivation," Mathews, 424 U.S. at 335, associated with detaining someone (as the Petitioner was after June 11), without any meaningful process. The Petitioner had been ordered to leave and was ready to leave. But in the absence of a structured process, what happened here was not surprising --- an "error[]," id., was made and the Petitioner was kept in custody after June 11.

4

Due process requires more, and plainly so.  Cf., e.g., Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 317-18 (E.D.N.Y. 2025); cf. also Khabazha v. U.S. Immigr. & Customs Enf't, 2025 WL 3281514, at *4-9 (S.D.N.Y. Nov. 25, 2025); O.F.C. v. Almodovar, 2026 WL 74262, at *5-14 (S.D.N.Y. Jan. 9, 2026).[3]

*   *   *

The Respondents' fallback seems to be that the Petitioner can now be detained --- under a provision of the Immigration and Nationality Act that empowers officials to detain non-citizens during the "removal period" that follows from the issuance of final order of removal.  See Respondents' Answer at 4-6 (invoking 8 U.S.C. § 1231(a)).

Per the statute, the "removal period" generally begins when an "order of removal becomes administratively final."  8 U.S.C. § 1231(a)(1)(B)(i).  And under the relevant regulations, "an alternate order of removal in connection with a grant of voluntary departure" becomes final "upon overstay of the voluntary departure period."  8 C.F.R. § 1241.1(f).

But on the facts of this case, Section 1231 detention is not now available.

"[O]verstay[ing]," id., a voluntary departure period is generally something that the non-citizen does --- not something that is done to him, by his being kept in custody such that federal officials have essentially prevented him from leaving the country.

As noted above, the Supreme Court has indicated that "when the government grants a non-citizen the option to voluntarily depart . . . [o]fficials may detain and remove the individual only if he remains in the country after his voluntary-departure period has expired."  Monsalvo, 604 U.S. at 715 (emphasis added).

The Respondents cannot detain the Petition because he "remains" in the United States when it is the Respondents who have prevented him from leaving.  Among other things, this would parlay the Respondents' due-process-violative conduct into a basis for mandatory detention.

---

[3]  Because the Court grants relief on Due Process grounds, it does not reach the other issues bases for relief invoked by the Petitioner.

\*     \*     \*

The Petitioner shall be promptly released from the custody of federal immigration officials.[4]

The Court assumes that, upon release, the Petitioner will take prompt action to voluntarily remove himself from the United States.

The Court expresses no view as to whether, at some point in the future, detaining the Petitioner would become lawful if he continues to remain in the United States.

IT IS on this 21st day of July, 2026, **SO ORDERED.**

S/Michael Farbiarz

Michael E. Farbiarz, U.S.D.J.

---

[4]  A note here.  When an immigration judge previously denied bond, it was not because the Petitioner posed a danger to the community.  See also March 26, 2026 Letter, Affidavit of Sumaira Khan, Esq. ¶¶ 3-4 ("The Immigration Judge explicitly found that [the Petitioner] is not a danger to the community."), Torres Gomez v. Soto, No. 2:26-cv-2886 (D.N.J. Mar. 26, 2026) (ECF 13-1).  Per the Petitioner, "[t]he parties agreed that . . . that danger was not an issue."  March 26, 2026 Letter at 2, Torres Gomez v. Soto, No. 2:26-cv-2886 (D.N.J. Mar. 26, 2026) (ECF 13).

6